UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ROLLER BEARING INDUSTRIES, INC.                                                         PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:05CV-508-S

MICHAEL E. PAUL, et al.                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendants, Michael E. Paul, et al., to dismiss most of the claims in this action in which the plaintiff, Roller Bearing Industries, Inc. ("RBI"), principally alleges fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. RBI alleges that its long-time employee, Michael Paul, participated with the other defendants in a scheme to defraud RBI of $1.3 million. The defendants contend that the fraud counts herein fail to plead fraud with particularity and fail to state a viable claim for relief. They urge that the RICO counts fail to allege the required elements and that portions of those claims are time-barred. Additionally, they raise standing and sufficiency concerns with respect to a number of state law claims. These challenges will be addressed *seriatim*.

When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The following facts alleged in the Complaint will be taken as true for purposes of this motion.

RBI is a Virginia corporation in the business of reconditioning roller bearings for use on railroad cars. Its principal place of business is Elizabethtown, Kentucky. Complaint ("Cpt."), ¶¶ 1, 13. Michael Paul worked for RBI from the mid-1980s until his resignation on October 10, 2004. He worked as RBI's Vice President of Operations with authority over the day-to-day operations of

- 2 -

RBI. Cpt. ¶ 14. The defendant, P. Eugene Paul, is the brother of Michael Paul and a business associate of the defendant, George R. Dilley. The defendant, Donna Paul, is the wife of P. Eugene Paul. Dilley and Eugene Paul are named individually, and doing business as G.R.D. Enterprises and RS Material. The defendant, P.E.P. Construction, Inc., is a Kentucky Corporation of which Eugene Paul is the President. Cpt., ¶¶ 15-18.[1] All of the defendants are citizens of Kentucky. Cpt., ¶¶ 3-9.

P.E.P. Construction provided start-up money, office space, and equipment to enable G.R.D. and RS to operate. Eugene Paul is President of P.E.P. Construction and co-owner of G.R.D. and RS. Cpt., 19. From December 12, 2000 to October 10, 2004, Michael Paul, Eugene Paul, Donna Paul and George Dilley executed a scheme to obtain payment to G.R.D. and RS for dirty bearings which were never supplied. In a nutshell, Michael Paul used his authority as Vice President of Operations to create a fraudulent paper trail for these fictitious purchases. Michael Paul either created the documents himself or obtained them from another employee by stating that he planned to make these purchases from G.R.D. and RS. George Dilley or Donna Paul signed phony G.R.D. and RS bills of lading indicating that RBI would receive a quantity of dirty bearings. Michael Paul would then cause another employee, Perry Miller to prepare false receiver forms indicating that RBI had received dirty bearings from G.R.D. and RS. On nearly all of the bills of lading Michael Paul forged the signature of Billy Williamson, as the recipient of the fictitious dirty bearings shipments. Donna Paul, Eugene Paul, or George Dilley would send RBI a G.R.D. or RS invoice for these fictitious shipments. Michael Paul would direct that the invoices be paid to G.R.D. and RS. Cpt., ¶¶ 20-21. $1,280,121.50 was paid to G.R.D. and RS over the four year period for fictitious purchases of dirty bearings. This is referred to by RBI as the "Dirty Bearings Scheme."

---

[1] P.E.P. Construction is named only in Counts II, V, and VII. The allegations against it are that it was an aider and abetter and co-conspirator in the perpetration of the wrongs against RBI. As such, the viability of the claims against this entity rises and falls on the viability of the underlying claims.

The defendants generated fifty-four such fraudulent transactions between December 12, 2000 and October 10, 2004.[2]  They used the United States mail, private carrier or wire services to carry out the fraudulent scheme.  G.R.D. received $359,734.00 and RS received $920,387.50 from RBI during this period.  Cpt., ¶¶ 22, 24.

Michael Paul used his position as RBI's Vice President of Operations to obtain improper reimbursement from RBI for personal expenses for himself and his friends.  Cpt., ¶ 30.  This is referred to by RBI as the "Fraudulent Reimbursement Scheme."  Additionally, Michael Paul failed to disclose to RBI in his 2003 and 2004 conflict-of-interest questionnaires that two vendors with whom he arranged for RBI to do business, G.R.D. and RS, were owned by his brother, Eugene Paul.  Michael Paul also failed to disclose that he had a business relationship with Dilley.  Cpt., ¶¶ 32, 33, 35-37.  This is referred to by RBI as the "Cover Up."

Analysis

A violation fo RICO under 18 U.S.C. § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389 (6th Cir. 1996), *quoting, Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).  The United States Court of Appeals for the Sixth Circuit has defined the legal framework for pleading a sufficient claim under the RICO statutes:

> "In order to establish 'racketeering activity' the plaintiffs must allege a predicate act," *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 389 (6th Cir. 1996), under 18 U.S.C. § 1961(1).  Plaintiffs alleged mail and wire fraud, 18 U.S.C. §§ 1341, 1343, in all of their RICO counts...Rule 9(b) of the Federal Rules of Civil Procedure provides that in a complaint alleging fraud, "the circumstances constituting fraud...shall be stated with particularity"...The purpose of Rule 9(b) is to provide fair notice to the defendant...The Sixth Circuit reads rule 9(b)'s requirement "liberally,...requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)..."[H]owever, allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and

---

[2]Attached to the Complaint is a spread sheet which details each of the 54 transactions.

> with a sufficient factual basis to support an inference that they were knowingly made." *Coffey*, 2 F.3d at 162...The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme. *United States v Brown*, 147 F.3d 477, 483 (6th Cir.), *cert. denied*..."To allege intentional fraud, there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension. Thus the plaintiffs must allege with particularity a false statement of fact made by the defendant which the plaintiff relied on." *Kenty*, 92 F.3d at 389-90 [emphasis omitted].

*Advocacy Organization for Patients and Providers v. Auto Club Insurance Association*, 176 F.3d 315, 322 (6th Cir. 1999).

Counts I, II and III allege violations of the RICO statutes. Count I alleges racketeering activity in the defendants' engagement in the Dirty Bearings Scheme. Count II alleges that the defendants conspired to engage in the Dirty Bearings Scheme and to cover it up. Count III alleges that Michael Paul engaged in racketeering activity in his perpetration of the Fraudulent Reimbursement Scheme.

Count I adequately alleges a violation of 18 U.S.C. § 1962(c) which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises's affairs through a pattern of racketeering activity or collection of unlawful debt." RBI has alleged in detail the method of operation of the Dirty Bearings Scheme whereby a falsified paper trail was generated to induce RBI to pay for fictitious purchases of dirty bearings. The allegations of the complaint accompanied by the spreadsheet detail the time, place and content of the misrepresentations concerning fictitious purchases and deliveries. The scheme to create a falsified paper trail was necessarily reasonably calculated to deceive RBI into believing they had made actual purchases. Representations made by RBI's Vice President of Operations would have reasonably been believed and relied upon. *Kenty*, 92 F.3d at 390, *citing, Blount Fin. Servs. Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 153 (6th Cir. 1987). The intent to obtain payment for fictitious purchases and the total of the payments which the scheme induced RBI to pay are

Case 3:05-cv-00508-CRS-JDM   Document 20   Filed 09/08/06   Page 5 of 9 PageID #: 191

specifically pled.  "Mail fraud and wire fraud are proven by showing a scheme or artifice to defraud combined with either a mailing or an electronic communication for the purpose of executing the scheme." *VanDenBroeck v. Commonpoint Mortgage Company*, 210 F.3d 696, 701 (6th Cir. 2000). The complaint alleges that the U.S. mail and wire communications were utilized in the perpetration of the scheme.

In order to state a claim under § 1962(c), RBI must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L., supra.*  An "enterprise," for purposes of § 1962(c) is the instrument through which illegal activity is conducted evidencing an ongoing organization with some sort of structure for making and carrying out decisions, that functions as a continuing unit, and which is separate and distinct from the pattern of racketeering activity.  *United States v. Chance*, 306 F.3d 356, 372 (6th Cir. 2002).  Count I alleges the organizational structure in which each defendant had a role.  The enterprise is alleged to have been operationally independent from the specific acts of fraud perpetrated on RBI.  The complaint sufficiently alleges an enterprise, as opposed to an "ad hoc association of criminals."  *Chance*, 306 F.3d at 373.  Further, the complaint clearly alleges a pattern of racketeering activity.  The court has already found that the allegations sufficiently allege mail and wire fraud, which meet the definition of racketeering activity.  Count I adequately alleges a pattern of racketeering activity inasmuch as the allegations evidence continuity plus relationship.  *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 1110 (6th Cir. 1995), *citing, Sedima, S.P.R.L., supra.* and *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)("it is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'").  The court noted in *H.J. Inc*. that "'Relationship' exists where the conduct in question 'embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission...and are not isolated events...'Continuity' is primarily a temporal concept."  *H.J. Inc.*, 58 F.3d at 240-41.  The complaint herein alleges a

pattern of fifty-four falsified purchases of dirty bearings over a period of four years accomplished by the same means of a falsified paper trail generated between the companies. The victim was repeatedly RBI, and the participants and method of commission were virtually the same in all of the transactions. Count I sufficiently alleges a pattern of racketeering activity rather than a series of isolated events.

For the reasons set forth above, dismissal will be denied as to Count I. Count II, alleging a conspiracy to engage in racketeering activity, is challenged by the defendants as insufficient only insofar as they urge that the substantive RICO count I and allegations of a the Cover-Up are insufficient. Dismissal will be denied as to Count II inasmuch as Count I has been adequately pled.[3]

Dismissal will be granted as to Count III. This claim alleged against Michael Paul lacks the essentials of a viable RICO claim. At best, the claim alleges garden variety fraud. There are no facts alleging use of an interstate communication facility. "Mail fraud and wire fraud are proven by showing a scheme or artifice to defraud combined with either a mailing or an electronic communication for the purpose of executing the scheme." *VanDenBroeck*, 210 F.3d at 701. The claim alleges only that Michael Paul purchased airline tickets which "passed through the United States mails or wires." Cpt., ¶ 72. The alleged fraud, however, was the submission of requests for reimbursement of ineligible expenses. There is no allegation in Count III of an electronic communication *for the purpose of executing the scheme. VanDenBroeck, supra.* Further, there is no continuity apparent in this claim. The allegations fail to allege a functioning and continuing unit that operated to execute a scheme. The mere fact that Michael Paul allegedly submitted ineligible expenses over a period of time that benefitted co-workers and friends does not establish the sort of

---

[3]The defendants urge dismissal of so much of Counts I and II as allege RICO activity prior to September 7, 2001. They urge that any claim based upon activity before that date is time-barred. Inasmuch as accrual of a RICO cause of action begins when "the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern," *Isaak v. Trumbull Savings & Loan Company*, 169 F.3d 390, 399 (6th Cir. 1999), this inquiry is not amenable to decision on this motion to dismiss.

long-term criminal conduct sought to be prohibited by the RICO statutes. *H.J. Inc.*, 492 U.S. at 241-42. The case principally relied upon by the plaintiff, *United States v. Stephens*, 421 F.3d 503 (6th Cir. 2005) is inapposite. The case involved a conviction for wire fraud where the defendant utilized a computer program, the Automatic Remote Time and Expense System, to file fraudulent bi-weekly time and expense reports. There is no such communication facility utilized here in perpetrating the alleged Fraudulent Reimbursement Scheme. RBI cites no authority interpreting the RICO statutes which supports its contention that Paul's submission of ineligible expenses contains an "organizational pattern beyond what was necessary to perpetrate the predicate crimes." *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (8th Cir. 1992). For these reasons, Count III will be dismissed.

Counts VI (Fraud), VII (Conspiracy to Commit Fraud), and XI (Negligent Misrepresentation) are based upon the same allegations of fact underlying the alleged Dirty Bearings Scheme. The defendants seek dismissal of these counts for failure to plead fraud with particularity. Dismissal of these counts will be denied for the same reasons that dismissal will be denied as to Counts I and II. Fraud has been alleged with sufficient particularity to overcome this challenge.

Counts VIII and IX allege unjust enrichment and seek disgorgement of benefits received by Michael Paul, Donna Paul, George Dilley, Eugene Paul, G.R.D. and RS. To the extent that the facts underlying Counts I and II allege fraud with sufficient particularity, the unjust enrichment claim of Count VIII also survives the motion to dismiss. Count IX is based upon the facts underlying the reimbursement of ineligible expenses. While Count III must be dismissed for failure to state a RICO claim, these underlying facts also form the underpinnings of a breach of fiduciary duty claim (Count IV in part) and negligent misrepresentation claim (Count XI). As the Complaint sufficiently alleges breach of fiduciary duty and negligent misrepresentation, the unjust enrichment claim of Count IX is not subject to dismissal.

Count IV alleges breaches of fiduciary duty by Michael Paul in (1) perpetrating the Dirty bearing Scheme, Cpt., ¶ 82; (2) in failing to comply with the corporation's conflict of interest policy, Cpt. ¶ 83; (3) by causing RBI to pay ineligible personal expenses for himself and others, Cpt., ¶ 84; and (4) by arranging for business to be subcontracted to Eugene Paul without disclosing to RBI this conflict of interest, Cpt., ¶ 85. This count is challenged only to the extent that it alleges a breach of fiduciary duty in connection with the Dirty Bearings Scheme. Count V (Aiding and Abetting Michael Paul's Breach of Fiduciary Duty) is challenged in this limited respect as well. As with the earlier counts, the defendants contend that the underlying facts are not pled with sufficient particularity. The court has found that Counts I and II are sufficiently pled. Therefore, the motion to dismiss Count IV in part and Count V will be denied.

Count X and Count XI in part, allege that in February, 2003 and 2004 Michael Paul committed fraud and negligent misrepresentation in failing to disclose that two vendors with whom he had arranged for RBI to do business were owned by his brother, Eugene Paul. The defendants urge that the conflict of interest policy was between the parent company of RBI and Michael Paul, and therefore RBI lacks standing to maintain this claim. Further, they urge that the conflict of interest policy does not prohibit the types of alleged transactions at issue. These challenges are both fact-based and thus not amenable to resolution on this motion to dismiss. There is no record evidence concerning the corporate structure of the companies nor of the nature of the transactions with which the claims are concerned. Taking the allegations of the Complaint as true, for purposes of this motion, we have a conflict of interest disclosure which Michael Paul was required to make in his capacity as Vice President of Operations of RBI. He withheld from these disclosures information concerning personal, familial ties to G.R.D. and RS to whom he routed business. We cannot say on these allegations that no viable claim exists. The motion to dismiss will be denied as to Count X and XI in part.

For the reasons set forth herein, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendants, Michael E. Paul, et al., to dismiss (DN 8) is **GRANTED IN PART AND DENIED IN PART**.  Count III of the Complaint is **DISMISSED**.  In all other respects the motion is **DENIED.**  The motion for leave to file a sur-reply (DN 15) is **GRANTED**.

**IT IS SO ORDERED**.