UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ROLLER BEARING INDUSTRIES, INC.,                                    PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:05-CV-508-S

MICHAEL E. PAUL et al.,                                                        DEFENDANTS

### MEMORANDUM OPINION

Roller Bearing Industries, Inc. ("RBI"), a Virginia corporation with its primary place of business in Kentucky, alleges that Michael Paul, while serving as its vice president, engaged in mail and wire fraud and thereby misappropriated some $1.3 million. It has asserted claims against Paul under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, as well as supplemental state-law claims. It originally filed this suit in September 2005 and has since amended its complaint twice, most recently in March 2008. On June 16, 2009, Paul moved the court to compel RBI to reimburse and advance him his fees and costs associated with this case. On October 5, 2009, before we could decide that motion, a federal grand jury returned a two-count indictment charging Paul with conspiring to defraud RBI and others. The criminal action arises out of the same core facts as this case. On October 14, 2009 we granted the defendants' unopposed motion to stay these proceedings pending resolution of the criminal action. Now before the court is Paul's request that we temporarily lift the stay for the limited purpose of considering his motion for a preliminary injunction. He seeks to force RBI to advance his fees and costs related to both this case and the criminal action, pursuant to a purported contractual obligation.

**I**

When the factual bases of pending civil and criminal cases overlap, courts frequently stay the civil case until the criminal case has concluded. Reasons for doing so include preventing the use

of civil discovery to obtain evidence for use in the criminal case, protecting witnesses' Fifth Amendment privileges, and avoiding exposure of defense strategies to government. *See Eastwood v. United States*, 2008 WL 5412857 (E.D. Tenn. November 14, 2008). Stays are fundamentally discretionary in nature, and are primarily in the hands of the trial judge. *See SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) ("[A] court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem[] to require such action . . . .'" (citations and internal quotation marks omitted)). In the circumstances of the case before us, none of the interests that justified granting the stay would be offended by the sort of relief that Paul seeks. He asks only that we resolve a collateral dispute relating to contracts and corporate law, the consideration of which will not involve investigation of the merits of either the civil or the criminal case. Consequently we will exercise our discretion and proceed to consider Paul's motion for preliminary injunction.

**II**

To begin, we note that a preliminary injunction is an appropriate remedy for Paul's grievance at this stage. "An action seeking to enforce the right to advancement is an action for specific performance of a contract. Specific performance is an equitable remedy, and an interim grant of specific relief is a preliminary injunction." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222-23 (10th Cir. 2009). In order to determine whether to grant a preliminary injunction, we consider four factors: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006)

(*citing Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (*citing Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).

A

So we first consider whether Paul is likely to succeed on the merits of his claim for advancement of fees and costs. Paul's claim is grounded in RBI's Articles of Incorporation, as amended December 19, 1988. The Articles of Amendment include the following provision:

> To the full extent required or permitted and in the manner prescribed by the Virginia Stock Corporation Act and any other applicable law, the Corporation shall indemnify a director or officer of the Corporation who is or was party to any proceeding by reason of the fact that he is or was such a director or officer or is or was serving at the request of the Corporation as a director, officer[,] employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other profit or nonprofit enterprise. *The Corporation shall promptly pay for or reimburse the reasonable expenses, including attorneys' fees, incurred by any such officer or director of the Corporation in connection with any proceeding (whether or not made a party) arising from his status as such officer or director, in advance of final disposition of any such proceeding upon receipt by the Corporation from such officer or director of (a) a written statement of good faith belief that he is entitled to indemnity by the Corporation and (b) a written undertaking, executed personally or on his behalf, to repay the amount so paid or reimbursed if after final disposition of such proceeding it is determined that he did not meet the applicable standard of conduct.* The Board of Directors is hereby empowered, by majority vote of a quorum of disinterested directors, to contract in advance to indemnify any director or officer.

(Ex. A to Def.'s Br., Articles of Amendment, Art. 6 ¶ 2 (emphasis added).) This arrangement is sanctioned by Virginia law, under which RBI is organized. *See* Va. Code Ann. §§ 13.1-699, 13.1-704(B). The second sentence states quite clearly that RBI committed itself to advancing the legal expenses accrued by its officers and directors arising from their employment, where the

- 3 -

requirements labeled (a) and (b) are met. RBI does not deny that Paul has filed a statement of good faith and an undertaking, so it is *prima facie* obligated to advance his costs. It defends on five other grounds.

First, it argues that Paul was not an "officer" within the meaning of the Articles of Incorporation. His title, as RBI admits, was Vice President of Operations. While a title might not be enough on its own to justify finding an employee to be an officer of the company, *see Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 450 (2003), Paul has filed as exhibits RBI's 2003 and 2004 Kentucky annual reports, in which he is labeled Vice President and identified as an officer. (Ex. A to Reply.) This question is beyond dispute.

Second, RBI argues that the legal proceedings for which Paul seeks advancement did not "aris[e] from his status as . . . officer." This too is unavailing. The allegations against Paul in both the civil and criminal cases are, at bottom, that he misused the authority and resources available to him as an officer to engage in fraudulent activities. In responding to Paul's motion to dismiss, RBI accused him of "us[ing] this position of authority" and "as RBI's Vice President of Operations" to cause RBI's losses, allegedly by misrepresenting that certain expenses were for business purposes. (Pl.'s Resp. to Mot. to Dismiss 2-3.) Whether or not these misdeeds occurred, the allegations could not have arisen absent Paul's status as an officer, which gave him the power to commit the offenses with which he is charged.

Third, RBI argues that its bylaws also address the subject of advancement, but that they make it discretionary rather than mandatory—i.e. "may be paid" where it is determined that they are appropriate rather than "shall be paid." Despite Paul's arguments to the contrary, it is clear that these provisions conflict. But it is not difficult to resolve this conflict: Virginia corporations law provides

that "[t]he bylaws of a corporation may contain any provision for managing the business and regulating the affairs of the corporation that is not inconsistent with law or the articles of incorporation." Va. Code Ann. § 13.1-823. Stated another way, the bylaws of a corporation may not contain any provision that is inconsistent with the articles of incorporation. "When a bylaw conflicts with the articles of incorporation, the articles will trump the bylaw and the bylaw will be considered void." *Leon v. Martin*, 2009 Va. Cir. LEXIS 124 (Va. Cir. Ct. Nov. 3, 2009) (*citing* 8 Fletcher Cyclopedia of the Law of Corporations § 4189 (Perm. ed. 1997)). It's clear that the mandatory language of the articles of incorporation (as amended) controls, and that the bylaws have no effect.

Fourth, RBI invokes the equitable doctrine of laches, which holds that a party may not unreasonably delay seeking relief so as to cause the opposing party harm. Whether to apply laches is ordinarily left to the discretion of the district court. *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 493 (6th Cir. 2007) (*citing Chirco v. Crosswinds Cmtys., Inc*., 474 F.3d 227, 231 (6th Cir. 2007)). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Chirco*, 474 F.3d at 231. Here we should distinguish between Paul's claim for advancement with respect to the criminal case, and his claim with respect to the civil case. Criminal charges were filed only last October, and the motion at bar was filed two months later. We see no lack of diligence there. The civil suit is something of a different story. RBI initiated it in September 2005, and Paul did not assert his claim for advancement (via his Motion to Compel of June 2009) until almost four years later. RBI plausibly argues that this constitutes an unreasonable delay and a lack of diligence, and Paul makes no real attempt to rebut those claims. (We note, however, that the motion to compel was filed well within the applicable five-year statute of limitations. *See* Va. Code Ann. § 8.01-246.2.) However,

RBI has not convinced the court that the delay in seeking relief prejudiced it. It has not argued that it made some business decision in reliance on the assumption that it would not have to pay the advancement costs mandated by its own articles of incorporation. It argues instead that (a) it has no wherewithal to pay any advancement; and (b) that it no longer has records necessary to rebut Paul's interpretation of the articles of incorporation or bylaws. With respect to (a), RBI has not submitted any actual evidence that it is financially incapable of paying them. Even if it were unable to pay, we do not think that this would constitute prejudice arising from Paul's lack of diligence. A lack of assets is no reason to discharge an obligation outside of bankruptcy court, and there is no evidence that RBI is in financial troube as a result of Paul's delay in asserting his claim. As to (b), RBI gives no indication of how any additional records could rebut the terms of the articles of incorporation. It points only to the fact that the only available copy of the bylaws is missing a page, but as we have explained the bylaws are irrelevant in the face of the articles' plain language. We therefore conclude that RBI has failed to show the requisite prejudice, and that laches is no bar to Paul's relief.

Finally, RBI argues that Paul cannot benefit from the advancement provisions because he is being sued and prosecuted for allegedly violating his fiduciary duties. In support, it cites *Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*, 830 F. Supp. 262, 269 (E.D. Pa. 1993) for the proposition that an advancement provision "cannot supersede the overriding duty of the directors to act in the best interest of the corporation." We first note that this approach has been rejected by both the Third Circuit and the Pennsylvania state courts. *See Ridder v. Cityfed Fin. Corp.*, 47 F.3d 85, 87 (3d Cir. 1995); *Neal v. Neumann Medical Ctr.*, 667 A.2d 479, 482 (Pa. Commw. Ct. 1995). Furthermore, the whole purpose of an advancement provision is to provide for a corporate officer's defense in cases like the two with which Paul is faced. Advancement is designed to allow an officer to defend

himself, against both civil and criminal charges, for actions arising out of his status as an officer.

The Delaware Chancery Court's reasoning is persuasive:

> It is not uncommon for corporate directors, officers, and employees to be sued for breach of the fiduciary duty of loyalty, and to have to defend claims that they took official action for the primary purpose of diverting corporate resources to their own pocketbooks—in the form of contractual compensation benefits (e.g., severance payments or stock options) or an unfair return on a self-dealing transaction. Therefore, it is highly problematic to make the advancement right of such officials dependent on the motivation ascribed to their conduct by the suing parties. To do so would be to largely vitiate the protections afforded by . . . contractual advancement rights.
>
> Corporate advancement practice has an admittedly maddening aspect. At the time that an advancement dispute ripens, it is often the case that the corporate board has drawn harsh conclusions about the integrity and fidelity of the corporate official seeking advancement. The board may well have a firm basis to believe that the official intentionally injured the corporation. It therefore is reluctant to advance funds for his defense, fearing that the funds will never be paid back and resisting the idea of seeing further depletion of corporate resources at the instance of someone perceived to be a faithless fiduciary.
>
> But, to give effect to this natural human reaction as public policy would be unwise. Imagine what [the plaintiff company] believes to be unthinkable: that the United States government and [the company] are in fact wrong about [the officer defendant]. . . . In that circumstance, it would be difficult to conceive of an argument that would properly leave him holding the bag for all of his legal fees and expenses resulting from two cases centering on his conduct as an employee of [the company]. That result would make the promise made to [the officer] . . . an illusory one.

*Reddy v. Elec. Data Sys. Corp.*, 2002 Del. Ch. LEXIS 69, at *15-17 (Del. Ch. June 18, 2002). If Paul is found guilty in the criminal action and/or liable in the civil action, the terms of the required undertaking (quoted at the top of this section) would allow RBI to recoup the advancement—thereby preserving its interest in not funding the defense of someone actually found to have defrauded it. The mere unproven allegation of malfeasance is not enough to overcome the clear language of the articles of incorporation.

Because the language of the articles of incorporation is clear, and none of RBI's objections is persuasive, we conclude that Paul is quite likely to win on the merits of his claim. We proceed to the likelihood of irreparable harm.

**B**

Paul argues that if he is denied an injunction, he will suffer the permanent loss of his contractual right to advancement. This, he says, is a right distinct from that to indemnity, which would be awarded only at the close of the case and only if he prevails. We agree. "Advancement is a distinct right complementary to the right to indemnification. Indemnification and advancement work in tandem to encourage talented individuals to serve as corporate officers." *Westar*, 552 F.3d at 1225 (*citing Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211-12 (Del. 2005)). Especially with respect to the criminal case, a delay in awarding the injunction would vitiate Paul's contractual right: Because this action is under stay until that one is closed, were we to deny advancement now Paul could not obtain it in any measure as to his criminal defense. He would be forced to front the whole of his expenses and hope to recoup them through indemnity later, contrary to the terms of RBI's articles of incorporation. The case is somewhat murkier with respect to the civil case, because Paul's motion to compel is still pending and would presumably be decided shortly after we permanently lift the stay. In the meantime, he is presumably not spending much on the litigation of a case that is stuck in legal purgatory. There are, however, some four years' worth of expenditures in this case which Paul appears to have a right to have prepaid. Furthermore, expenses related to this case will begin to accrue again as soon as the stay is lifted, and various matters may require defense counsel's attention before we rule on the motion to compel. Consequently we think there is a high risk of

irreparable harm—viz., the loss of the right to have legal fees paid by RBI in advance—were we to decline the injunction.

RBI mounts several arguments in an effort to get around this conclusion, but to no avail. It asserts that the fact that Paul did not demand advancement for some four years after the civil case was filed indicates that he has suffered no irreparable harm, and that he will continue not to be harmed going forward. It points out that Paul is silent as to his financial situation, implying that he can afford his attorney without RBI's help. It goes on to observe that in the criminal case counsel is guaranteed him by the Constitution, even if he should become indigent. All these arguments boil down to the central premise that the right that Paul seeks to vindicate here is about money. And of course it is, in one sense. But in fact it is more specific than that: Paul seeks to enforce a specific contractual right to have his expenses *prepaid*. As long as he continues to litigate these cases at his own initial expense, he is being deprived of a service to which he is entitled under RBI's articles of incorporation. And as long as he is deprived of that right, he is also deprived of the ability to use his own funds as he would like, of the right to direct his defense without immediate regard for his finances, and so on.

The cases that RBI cites in support of its position do not convince us otherwise. In *Eisenberg v. United States District Court*, 910 F.2d 374 (7th Cir. 1990), petitioner, counsel for two indigent federal criminal defendants, sought mandamus from the court of appeals to require the district court to pay out-of-pocket expenses up front. The court found that there was no irreparable harm in the district court's denial of funding. It assumed that the petitioner could not present an effective defense without making the expenditures for which he sought prepayment. The court then reasoned that the petitioner could either pay the expenses up front and seek reimbursement (with interest) at a later

date, or forego the expenses altogether. In either case he would be able to take a regular appeal of the denial of funds. (The court also indicated that he could seek certification of the issue for immediate appeal under 28 U.S.C. § 1292(b). *Eisenberg*, 910 F.2d at 376.) This analysis is inapposite here for reasons already discussed. In *Eisenberg*, the right to be paid was undifferentiated: there is no constitutional distinction between prepayment and postpayment with interest. Here, however, Paul was afforded a specific contractual right to have his attorney's fees and expenses paid in advance. This is, as we have said, a right distinct from the right to indemnity. Depriving him of the right to advancement until after trial is to deny that right permanently.

In *McPeek v. Travelers Casualty & Surety Company*, 2006 U.S. Dist. LEXIS 28619 (W.D. Pa. May 10, 2006), the insurance company resisted its contractual obligation to advance the plaintiff's defense costs in another related action. Reasoning that the Third Circuit requires actual evidence of irreparable harm before an injunction is available, the court dismissed the claim without prejudice for lack of any evidence on this point. Though we are in a position quite similar to that faced by the *McPeek* court, we conclude that its reasoning is inapplicable to this case. RBI has not pointed us to any Sixth Circuit cases requiring presentation of actual evidence before an injunction can be granted. Further, the sort of evidence that Paul could supply would not be particularly illuminating: "Yes," he might write in an affidavit, "if this injunction is denied I will lose my contractual right to prepayment of legal fees and expenses." Everyone already knows this. The probable existence of the right at issue has already been proved; we do not need further evidence to know that to deny the injunction is to deny the enjoyment of that right.

We conclude that Paul has adequately shown a probability of irreparable harm in the form of the loss of his contractual right to advancement.

**C**

Next we ask whether the grant of preliminary injunction is likely to cause substantial harm to others. The only harm that RBI alleges will result is to itself. But we agree with Paul that requiring RBI to honor its contractual obligations cannot constitute a substantial harm. It agreed to the risk that it would have to fund its officers' legal defenses some day. Furthermore, it is protected from permanent loss by the requirement that Paul provide an undertaking. If he ultimately loses his cases, goes bankrupt, and is unable to make good on his commitment, well, RBI accepted that risk too. More importantly, any such loss would be the result of enforcing RBI's agreements, not of the injunction itself. That is, whether we order RBI to abide by its agreement now or in the future (or if it somehow were to decide on its own to pay), the effect on its finances and the threat of bankruptcy are the same. An injunction would not burden RBI any more than it has already burdened itself.

**D**

RBI states in its brief that "[t]he public policy support for upholding an undisputed contractual right is evident." (Resp. 8.) Just so. While RBI argues that there is no such support here because it contests liability, all its objections fail as explained above. Thus the public interest in favor of enforcing contracts is served by issuing an injunction. So is the public interest in allowing for advancement of fees and costs in appropriate cases, as established by the Virginia legislature. RBI makes no counterbalancing showing that any public interest will be harmed by the requested relief.

\*   \*   \*

We thus conclude that each of the four factors militates in favor of issuing an injunction for the enforcement of Paul's right to advancement. A separate order will effectuate this conclusion.